United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CISCO SYSTEMS, INC.,

Plaintiff,

v.

TELECONFERENCE SYSTEMS, LLC, et al.,

Defendants.

No. C 09-01550 JSW

**SECOND CLAIMS CONSTRUCTION ORDER**

---

TELECONFERENCE SYSTEMS, LLC,

Plaintiff,

v.

TANDBERG, INC., et al.,

Defendants.

No. C 10-01325 JSW

---

TELECONFERENCE SYSTEMS, LLC,

Plaintiff,

v.

AT&T CORP., et al.,

Defendants.

No. C 10-05740 JSW

______________________________________/

United States District Court
For the Northern District of California

The Court has been presented with a technology tutorial and briefing on the construction of claim terms *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). This Order construes the tenth claim term selected by the parties which appear in the patent at issue in this case, United States Patent No. 6,980,526 ("the '526 Patent") called the "Multiple Subscriber Videoconferencing System."

**BACKGROUND**

Teleconference Systems, LLC and Margalla Communications, Inc.'s ("Plaintiffs") contends that Cisco System, Inc., HSBC USA, Inc., Baxter Healthcare Corporation, Applied Materials, Inc., Wachovia Corporation, Staples, Inc., Enbridge Holdings (U.S.), L.L.C., General Electric Company, SAP America, Tandberg, Inc., Avago Technologies U.S. Inc, Bayer Corporation, One Communications Corp., AT&T Corporation, and Frito-Lay North America, Inc. (collectively referred to as "Defendants") infringe the '526 Patent.

The Court shall address additional facts as necessary in the remainder of this Order.

**ANALYSIS**

**A. Legal Standard.**

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). The interpretation of the scope and meaning of disputed terms in patent claims is a question of law and exclusively within the province of a court to decide. *Markman*, 517 U.S. at 372. The inquiry into the meaning of the claim terms is "an objective one." *Innova/Pure Water*, 381 F.3d at 1116. As a result, when a court construes disputed terms, it "looks to those sources available to the public that show what a person of skill in the art would have understood the disputed claim language to mean." *Id.* In most cases, a court's analysis will focus on three sources: the claims, the specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). However, on occasion, it is appropriate to rely on extrinsic evidence regarding the relevant scientific principles, the meaning of technical terms, and the state of the art at the time at the time the patent issued. *Id.* at 979-981.

United States District Court
For the Northern District of California

The starting point of the claim construction analysis is an examination of the specific claim language. A court's "claim construction analysis must begin and remain centered on the claim language itself, for that is the language that the patentee has chosen to particularly point out and distinctly claim the subject matter which the patentee regards as his invention." *Innova/Pure Water*, 381 F.3d at 1116 (internal quotations and citations omitted). Indeed, in the absence of an express intent to impart a novel meaning to a term, an inventor's chosen language is given its ordinary meaning. *York Prods., Inc. v. Cent. Tractor Farm & Family Center*, 99 F.3d 1568, 1572 (Fed. Cir. 1996). Thus, "[c]laim language generally carries the ordinary meaning of the words in their normal usage in the field of the invention." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1367 (Fed. Cir. 2003); *see also Renishaw v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) (recognizing that "the claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim"). A court's final construction, therefore, must accord with the words chosen by the patentee to mete out the boundaries of the claimed invention.

The court should also look to intrinsic evidence, including the written description, the drawings, and the prosecution history, if included in the record, to provide context and clarification regarding the intended meaning of the claim terms. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324-25 (Fed. Cir. 2002). The claims do not stand alone. Rather, "they are part of 'a fully integrated written instrument.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (quoting *Markman*, 52 F.3d at 978). The specification "may act as a sort of dictionary, which explains the invention and may define terms used in the claims." *Markman*, 52 F.3d at 979. The specification also can indicate whether the patentee intended to limit the scope of a claim, despite the use of seemingly broad claim language. *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001) (recognizing that when the specification "makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the

United States District Court
For the Northern District of California

language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question").

Intent to limit the claims can be demonstrated in a number of ways. For example, if the patentee "acted as his own lexicographer," and clearly and precisely "set forth a definition of the disputed claim term in either the specification or prosecution history," a court will defer to that definition. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). In order to so limit the claims, "the patent applicant [must] set out the different meaning in the specification in a manner sufficient to give one of ordinary skill in the art notice of the change from ordinary meaning." *Innova/Pure Water*, 381 F.3d at 1117. In addition, a court will adopt an alternative meaning of a term "if the intrinsic evidence shows that the patentee distinguished that term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention." *CCS Fitness*, 288 F.3d at 1367. For example the presumption of ordinary meaning will give way where the "inventor has disavowed or disclaimed scope of coverage, by using words or expressions of manifest exclusion or restriction, representing clear disavowal of claim scope." *Gemstar-TV Guide Int'l Inc. v. ITC*, 383 F.3d 1352, 1364 (Fed. Cir. 2004). Likewise, the specification may be used to resolve ambiguity "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex*, 299 F.3d at 1325.

However, limitations from the specification (such as from the preferred embodiment) may not be read into the claims, absent the inventor's express intention to the contrary. *Id.* at 1326; *see also CCS Fitness*, 288 F.3d at 1366 ("[A] patentee need not 'describe in the specification every conceivable and possible future embodiment of his invention.'") (quoting *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001)). To protect against this result, a court's focus should remain on understanding how a person of ordinary skill in the art would understand the claim terms. *Phillips*, 415 F.3d at 1323.

If the analysis of the intrinsic evidence fails to resolve any ambiguity in the claim language, a court then may turn to extrinsic evidence, such as expert declarations and testimony

United States District Court
For the Northern District of California

from the inventors. *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1367 (Fed. Cir. 2003) ("When an analysis of *intrinsic* evidence resolves any ambiguity in a disputed claim term, it is improper to rely on extrinsic evidence to contradict the meaning so ascertained.") (emphasis in original). When considering extrinsic evidence, a court should take care not to use it to vary or contradict the claim terms. Rather, extrinsic evidence is relied upon more appropriately to assist in determining the meaning or scope of technical terms in the claims. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996).

Dictionaries also may play a role in the determination of the ordinary and customary meaning of a claim term. In *Phillips*, the Federal Circuit reiterated that "[d]ictionaries or comparable sources are often useful to assist in understanding the commonly understood meanings of words...." *Phillips*, 415 F.3d at 1322. The *Phillips* court, however, also admonished that district courts should be careful not to allow dictionary definitions to supplant the inventor's understanding of the claimed subject matter. "The main problem with elevating the dictionary to ... prominence is that it focuses the inquiry on the abstract meaning of the words rather than on the meaning of claim terms within in the context of the patent." *Id.* at 1321. Accordingly, dictionaries necessarily must play a role subordinate to the intrinsic evidence.

In addition, a court has the discretion to rely upon prior art, whether or not cited in the specification or the file history, but only when the meaning of the disputed terms cannot be ascertained from a careful reading of the public record. *Vitronics*, 90 F.3d at 1584. Referring to prior art may make it unnecessary to rely upon expert testimony, because prior art may be indicative of what those skilled in the art generally understood certain terms to mean. *Id.*

**B. Claim Construction.**

The parties have clarified that they seek construction of the term "configuring the switch to connect calls" as the tenth term. Plaintiffs contend that this term does not need construction because it will be readily comprehensible to the finder of fact. Defendants counter that the term should be construed to mean "registering subscriber terminal network addresses at the videoconferencing services switch using registration messages from the subscriber terminals."

Plaintiffs do not dispute that "configuring the switch" may include registering subscriber terminal network addresses, but argue that there is no support in the '526 Patent for limiting the term in this manner. Upon review of the intrinsic evidence, the Court agrees. "Configuring" may include, but is not limited to, registering subscriber terminal network addresses. Accordingly, the Court rejects Defendants' proposed construction. Moreover, as Plaintiffs note in their reply brief, Defendants have not provided any explanation as to why a jury would struggle with understanding the term "configuring." Therefore, the Court finds that this term does not need construction.

**CONCLUSION**

Based on the analysis set forth above, the Court adopts the foregoing construction of the term "configuring the switch to connect calls." The parties are ordered to submit a further joint case management report pursuant to Patent Standing Order ¶ 13 by no later than May 4, 2012. The Court further orders that the motion filed by Teleconference Systems, LLC ("TS") for leave to serve and file supplemental infringement contentions is HEREBY STRUCK without prejudice. In its motion, TS noted that the Court had not yet construed this tenth term and stated that, depending on the Court's construction of this term, additional modification or supplementation of TS's infringement contentions may be necessary. The Court prefers to adjudicate any requests to supplement infringement contentions in one motion, as opposed to successive motions. Therefore, now that the Court has issued its construction of the remaining term, the parties may consider whether they seek any additional changes or supplementation of their infringement contentions. TS may amend its motion to address the Court's construction of the term "configuring the switch to connect calls." If TS does not seek leave to further supplement its infringement contentions, then TS may simply refile its motion.

**IT IS SO ORDERED.**

Dated: March 16, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California